IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEONTE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-1278-SMY-RJD |
| | ) |
| DR. VIPIN SHAH, SUZANN BAILEY, | ) |
| WARDEN LASHBROOK, and JOHN R. | ) |
| BALDWIN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Leonte Williams, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Specifically, Williams alleges that the soy-based diet and brunch program served at Pinckneyville caused him to suffer various health problems. He is proceeding on the following claims:

    Count One: Director Baldwin, Food Service Administrator Bailey, and Warden Lashbrook violated Williams' Eighth Amendment rights by serving him soy meals.

    Count Two: Dr. Shah was deliberately indifferent to Williams' Eighth Amendment rights.

    Count Three: Director Baldwin, Food Service Administrator Bailey, and Warden Lashbrook violated the Eighth Amendment by instituting a two-meal-per-day policy.

Defendants Baldwin, Bailey, and Lashbrook, and Defendant Dr. Shah filed motions for summary judgment that are now before the Court (Docs. 82 and 88). Plaintiff filed responses to

the same (Docs. 96 and 97).[1] For the following reasons, Defendants' motions are **GRANTED**.

## Discussion

Plaintiff Leonte Williams was incarcerated at Pinckneyville from July 2015 to February 2016 (Deposition of Leonte Willams, Doc. 83-1 at 67). When Williams arrived at Pinckneyville, it was utilizing a "brunch" program wherein inmates were served two, rather than three meals per day (*Id.* at 14-15). The brunch meal was served around 10:30 or 11:00 a.m. and, according to Williams, typically consisted of grits, fried chicken, a snack, bread, milk, and juice (*Id.* at 15). Dinner was served around 4:30 or 5:00 p.m. and typically consisted of a hot dog, bread, a snack, vegetables, and a side dish (*Id.* at 16). According to the Declaration of Suzann Bailey, who was the IDOC Food Service Administrator and licensed dietician during the relevant period, the brunch program required that all inmates receive 2,200 to 2,400 calories, eight ounces of protein, and at least five fruit or vegetable choices a day, similar to the regular (three meals per day) meal program[2] (Declaration of Suzann Bailey, Doc. 83-2 at ¶¶ 4, 9).

Commonly, Williams did not receive eight ounces of protein a day or five servings of vegetables per day, and he would often receive food trays with multiple empty compartments (Affidavit of Leonte Williams, Doc. 97-4 at ¶¶ 9-11). Williams believes he lost weight due to the brunch program, but has no "proof" of the same (Doc. 83-1 at 22-23). The brunch program was discontinued on December 1, 2015 (*Id.* at 22; Doc. 83-2 at ¶ 8).

Williams also suffered worsening symptoms related to soy in his diet in 2015 while at

---

[1] Defendant Dr. Shah filed a reply that will not be considered by the Court due to his failure to comply with the undersigned's procedures for filing the same.

[2] Williams objects to Defendant Bailey's statements, arguing he "does not know what facts will be developed regarding these allegations as they relate to the brunch program due to the status of discovery." Williams' objection is misplaced. Defendants' motion for summary judgment was filed on the day discovery closed. Therefore, it is not clear what further discovery Williams anticipated completing in order to respond to Defendants' motion. If Williams needed additional discovery to respond to Defendants' motion, he should have either moved for an extension of the discovery deadline (although the Court notes it indicated no further extensions of the discovery deadline would be granted absent extraordinary circumstances (Doc. 81)), or filed an appropriate Rule 56(d) motion, which he did not. Williams' belated request for a continuance that was included in his opposition brief is not properly supported as he has not shown by affidavit or declaration that, for specified reasons, he cannot present facts essential to his opposition.

Pinckneyville (Doc. 83-1 at 37). In particular, he suffered from constipation, diarrhea, and stomach pain (*Id.* at 37, 40). Williams also noticed blood in his stool on one occasion (*Id.* at 40-41). In August 2015, Williams began complaining to the nurses dispensing medication in segregation about his symptoms (*Id.* at 63).

Williams contends that he saw Dr. Shah on July 31, 2015, October 30, 2015, November 11, 2015 and November 30, 2015 (*Id.* at 71). Specifically, Williams saw Dr. Shah on July 31, 2015 while he was doing a walkthrough in his cell house, and told Dr. Shah he was experiencing migraines and headaches (*Id.* at 72-73). Dr. Shah told Williams he "looked good" and directed him to fill out a sick call request form if he felt he needed to be seen (*Id.* at 74). On October 30, 2015, Williams complained to Dr. Shah about migraines, constipation, and diarrhea (*Id.* at 81). He told Dr. Shah that he believed the soy in his diet was causing his symptoms (*Id.*). He asked for a thyroid check, but Dr. Shah only told him to drink more water (*Id.* at 81-82).

Williams testified that he also saw Dr. Shah in November 2015, and Dr. Shah ordered soy allergy testing on that date (*Id.* at 84-85). According to Williams, Dr. Shah indicated his "level" was a little high, but he was fine (*Id.* at 85). Dr. Shah advised Williams to eat more soy and drink more water so his body would get used to it (*Id.*).

Williams' medical records indicate that he first saw Dr. Shah on November 19, 2015, and that Williams complained of problems with bowel movements and gas and reported that he was sometimes vomiting after eating. (Affidavit of Dr. Vipin Shah, Doc. 89-2 at ¶ 10; Doc. 89-3 at 19). Dr. Shah completed a physical examination that was normal, and ordered allergy and thyroid testing, as well as other lab work (*Id.*). The results revealed that Williams' thyroid function was normal, and the testing for a soy allergy was inconclusive[3] (Doc. 89-2 at ¶ 12). Dr.

---

[3] Although not explained in detail by Dr. Shah, Williams' allergen value appears to be 0.14. According to the laboratory reference interval, a result of 0.10 to 0.34 kU/L is "intended for specialist use as the clinical relevance is undetermined" (Doc. 89-3 at 28). By comparison, a result of 0.35 to 0.70 kU/L is "low" and a value of 0.71 to 3.50 kU/L is "moderate" (*Id.*).

Shah advised Williams not to worry about a soy allergy because he was not developing a rash or hives and did not have shortness of breath, which would be indicative of an allergic reaction (*Id.*).

Williams did not seek additional treatment for any complaints related to a soy allergy following his November 2015 visit with Dr. Shah (Doc. 83-1 at 86-87). From November 2015 to the present time, Williams has avoided soy and has self-regulated towards a soy-free diet by trading and trafficking food (*Id.* at 87; Doc. 96-1 at ¶ 5). He did not request a soy free diet after transferring to Pontiac Correctional Center in February 2016 (Doc. 83-1 at 91).

## **Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

# COUNT ONE

In Count One, Williams alleges that Director Baldwin, Food Service Administrator Bailey, and Warden Lashbrook violated his Eighth Amendment rights by serving him soy-based foods. Defendants argue they are entitled to summary judgment as to this claim because they are protected by the doctrine of qualified immunity.

Government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the Court engages in a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second question is whether that particular constitutional right was "clearly established" at the time of the alleged violation. *Id.* The Court may consider the two elements in either order. *Volkman*, 736 F.3d at 1090 (citing *Pearson*, 555 U.S. at 236-42).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In other words, the unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing that the defendant's conduct was unconstitutional or by presenting evidence that the defendant's conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court.

*See Hope*, 536 U.S. at 739-40.

Defendants contend they are entitled to qualified immunity because no court has found soy to be inherently harmful, that an amount of soy ingested over a fixed threshold is harmful, or that IDOC's inclusion of soy in a prison diet is unhealthy or nutritionally inadequate. The Court agrees, as it has not found a single case that concludes soy-based diets pose a serious risk to inmates' health generally. Nor has the Court found a case that holds soy is nutritionally inadequate or that its inclusion in the prison diet violates the Constitution. In fact, the Seventh Circuit has specifically rejected the argument that a soy-based diet violates the Constitution. *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015). Also, a number of district courts have rejected inmates' claims that consuming soy products in their diet puts them at risk of serious harm. *See Harris v. Brown*, 07-CV-3225, 2014 WL 4948229, *4 (C.D. Ill. Sept. 30, 2014).

In an attempt to demonstrate a clearly established constitutional right, Williams relies on *Munson v. Shearing, et al.*, Case No. 15-cv-62-MJR-SCW, 2017 WL 1862203 (S.D. Ill. May 9, 2017), noting that the court in that case found that there were factual issues which prevented it from awarding summary judgment for the defendants. But the court in *Munson* did not conclude that the inclusion of soy in a prison diet is generally unhealthy, nutritionally inadequate, or violates the Constitution. Rather, it determined factual issues precluded an award of summary judgment for the medical defendants on the plaintiff's claim of deliberate indifference to his serious medical needs.

Williams also seeks to hold Defendants Baldwin, Bailey, and Lashbrook liable for deliberate indifference to his medical condition and medical needs allegedly caused by the inclusion of soy in his diet. However, there is no evidence that these defendants were aware of his medical conditions or his complaints concerning the soy in his diet. Because Williams has

made no showing that Defendants knew a soy-heavy diet posed any risk or that they knew it would cause him a substantial risk of serious harm, they are entitled to qualified immunity on Count One.

## COUNT TWO

In Count Two, Williams alleges that Dr. Shah was deliberately indifference to his serious medical needs because he failed to adequately address his complaints concerning soy in his diet. As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" may constitute an objectively serious medical condition for Eighth Amendment purposes. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

In order to show that prison officials acted with a sufficiently culpable state of mind, the plaintiff must demonstrate that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were literally ignored;

only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).

Here, Williams saw Dr. Shah four times during a four-month period during which he complained about various symptoms, some of which he attributed to the consumption of soy. On three occasions, Williams stopped Dr. Shah while Dr. Shah was in his cell house, but he did not have an appointment in the healthcare unit. When this occurred, Dr. Shah directed Williams to submit a sick call request or provided him basic advice in an attempt to address his complaints. It appears that Williams only presented to the healthcare unit on one occasion in November 2015 for a physical exam, despite submitting a number of sick call requests[4].

Dr. Shah did not note any abnormalities during his physical examination of Williams in November 2015, but followed-up with allergy and thyroid testing because of his complaints about soy in his diet. Williams' thyroid was normal, and testing for a soy allergy was inconclusive. Based on this testing and a review of his symptoms, Dr. Shah advised Williams not to worry about a soy allergy because he was not presenting with a rash or hives, or shortness of breath. Williams was instructed to follow-up as needed, but never sought treatment after November 2015 for any complaints related to soy in his diet.

Even when viewing the evidence in Williams' favor, Dr. Shah's treatment cannot be considered "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional

---

[4] There is no evidence that Dr. Shah received, or should have received, Williams' sick call requests.

standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Id.*

Although Williams clearly disagrees with Dr. Shah's course of treatment and believes he should have prescribed him a soy-free diet, such disagreement is not sufficient to establish deliberate indifference. While Dr. Shah's told Williams not to worry about a soy allergy after reviewing test results, he also instructed him to follow-up as needed. Williams failed to do so. Because Dr. Shah used his medical judgment in assessing and treating Williams' complaints, the Court finds that no reasonable jury could conclude that Dr. Shah acted with deliberate indifference to the same. Accordingly, Dr. Shah is entitled to summary judgment as to Count Two.

### COUNT THREE

Finally, in Count Three, Williams alleges that Director Baldwin, Food Service Administrator Bailey, and Warden Lashbrook violated his Eighth Amendment rights by instituting a two-meal per day policy at Pinckneyville. An inmate who is deprived of adequate nutrition may be able to sustain an Eighth Amendment claim for denial of "basic human needs" or "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). However, the denial of food is not a *per se* violation of the Eighth Amendment, and the Court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first prong of *Farmer v. Brennan*, 511 U.S. 825 (1994)); *Berry v. Brady*, 192 F.3d

504, 507 (5th Cir. 1998) (serving inmates only two meals per day may satisfy the Eighth Amendment if the meals are nutritionally adequate).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court instructed courts evaluating claims of unconstitutional conditions of confinement to consider: (1) whether the defendant prison officials acted with the requisite state of mind (the subjective component) and (2) whether the alleged deprivations were sufficiently serious to rise to the level of a constitutional violation (the objective component). Therefore, to establish his Eighth Amendment claim, Plaintiff must show that he was subjected to conditions that denied him "the minimal civilized measure of life's necessities" *and* that Defendants acted with a culpable state of mind. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Farmer,* 511 U.S. at 847 ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (other citations omitted)).

Williams believes the meals at Pinckneyville only consisted of 750 calories, and that he lost weight as a result. First, Williams admits he has no evidence on which to base his claim that the meals at Pinckneyville only consisted of 750 calories. The only competent evidence before the Court is that the meals for the "brunch" program provided a total of approximately 2,200 to 2,400 calories per day, the same as the combined calorie content for the regular meal program (three meals per day). Moreover, Williams' complaint of weight loss is not sufficient evidence of harm, much less serious harm, to meet the objective requirement of his Eighth Amendment claim. Indeed, Williams has not presented any evidence to support his claim of weight loss. *See Godfrey v. Spiller*, Case No. 15-cv-455-SMY-RJD, 2018 WL 1706371, *3 (April 9, 2018). As such, Defendants are entitled to judgment as a matter of law as to Count Three.

## Conclusion

The Motion for Summary Judgment filed by Suzann Bailey, Jacqueline Lashbrook, and John Baldwin (Doc. 82), and the Motion for Summary Judgment filed by Dr. Vipin Shah (Doc. 88) are **GRANTED**. All other pending motions are **DENIED as moot**. The Clerk of Court is **DIRECTED** to enter judgment against Plaintiff Leonte Williams and in favor of Suzann Bailey, Jacqueline Lashbrook, John Baldwin, and Dr. Vipin Shah, and to close this case.

**IT IS SO ORDERED.**

**DATED: May 31, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**